**E-FILED**
Tuesday, 30 January, 2007  02:31:23 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| C.A.H., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 06-4007 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of SSA, | ) | |
| | ) | |
| Defendant. | ) | |

## **O R D E R**

Before the Court are a motion by Plaintiff C.A.H., a minor child, by her mother, Bonnie Blackman, (hereinafter Plaintiff) for summary reversal [Doc. #14] and a motion by Defendant Commissioner of Social Security (hereinafter "Commissioner") for summary affirmance [Doc. #17] of a final decision of the Commissioner which denied supplemental security income (hereinafter "SSI") benefits to Plaintiff.  For the reasons set forth below, Plaintiff's motion for summary reversal is DENIED, and the Commissioner's motion to affirm is GRANTED.

### PROCEDURAL BACKGROUND

Plaintiff first filed an application for child's SSI benefits on June 27, 2003, pursuant to Section 1614(a)(3)(c) of the Social Security Act alleging a disability onset date of June 27, 2003, due to Attention Deficit Hyperactivity Disorder ("ADHD"). (Tr.66).  Her application was denied initially and upon reconsideration by the Social Security Administration.  On September 20, 2005, Plaintiff appeared with her mother and attorney before the Administrative Law Judge ("ALJ"), who decided that Plaintiff was not "disabled" as defined in the Social Security Act.  Plaintiff's appeal of the

ALJ's decision to the Appeals Council was rejected leaving the ALJ's decision of October 25, 2005, as the final agency action. Plaintiff then brought the instant action for judicial review of the Commissioner's action in denying her application.

At the time of the hearing on September 20, 2005, the ALJ found that Plaintiff, then seven years old and in the first grade, had the following impairment: Attention Deficit Hyperactivity Disorder (ADHD).

In denying Plaintiff's application, the ALJ determined that she was not "disabled" as defined by the Social Security Act, as amended.  The ALJ found that her impairment – ADHD (section 112.11 of the Listing of Impairments) – although severe, did not medically meet or equal the severity of any of those listed in Part B or Part A of Appendix 1, Subpart P of Part 404 (the Listing of Impairments); and it did not "functionally equal the severity of the listings" since Plaintiff did not have an "extreme" limitation in any domain of functioning or a "marked" limitation in two domains of functioning.  (See 20 C.F.R. §§ 416.924(d)(2) and 416.926(a)).  Based upon these findings, the ALJ determined that Plaintiff was not under a "disability" as defined in the Social Security Act at any time through the date of his decision.  (See 20 C.F.R. § 416.906).

The issue before the Court is not whether the ALJ was correct in his decision but whether or not there is substantial evidence in the record to support the Commissioner's decision that Plaintiff was not "disabled" and had not established entitlement to SSI benefits (child's).

2

## APPLICABLE LAW

In order to be entitled to SSI benefits under the Social Security Act, a child must show that she has a medically determined physical or mental impairment or combination of impairments that causes marked and severe functional limitations that can be expected to last for a continuous period of not less than twelve months.  (See 20 C.F.R. § 416.906).

In determining whether a child is eligible for SSI payments on the basis of disability, a three-step sequential evaluation must be completed.  (See 20 C.F.R. § 416.924).  First, is the child engaged in substantial gainful activity?  A child is not disabled if engaging in substantial gainful activity.  Second, does the child have an impairment or combination of impairments that is "severe?"  A child  is not disabled if no severe impairment exists.  Third, if the child's impairment medically meets, equals, or functionally equals one of the listings, the child is disabled.

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's findings with the Court's own assessment of the evidence.  The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).  In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Credibility determination made by the ALJ will not be disturbed

3

unless the finding is clearly erroneous.   <u>Anderson v. City of</u>
<u>Bessemer City</u>, 470 U.S. 564 (1985).

In this case, the Commissioner decided that Plaintiff was not
entitled to SSI benefits because she was not "disabled" as defined
in the Social Security Act, as amended.  (<u>See</u> 20 C.F.R. § 416.906).

In context of the three-step sequential evaluation process,
the ALJ found in favor of Plaintiff at steps 1 and 2.  At step 3 –
the last step – the ALJ found that Plaintiff's impairment did not
meet or medically equal or was functionally equivalent to one of
the Listing of Impairments.  In coming to this conclusion, the ALJ
noted that he had considered all of the evidence in the record,
including the medical records and other evidence, and had
considered all relevant factors listed in 20 C.F.R. § 416.924a.
"Functionally equal the listings" means that ". . . your impair-
ments must be of listing-level severity, i.e., it must result in
'marked' limitations in two domains of functioning or an 'extreme'
limitation in one domain."  In other words as explained in section
416.926a, the ALJ must assess the "functional limitations" caused
by [Plaintiff's] impairment; i.e., "what [she] cannot do, have
difficulty doing, need help doing, or are restrained from doing
because of [her] impairment."   (<u>See</u> 20 C.F.R. § 416.926a(a)).

In assessing functional limitations, factors to be considered
include medical evidence obtained from medical sources such as a
pediatrician or other physician, psychologist, or qualified speech-
language pathologist, and information from non-medical sources such
as a child's parents, teachers (including school records), and
other people who know her.   (<u>See</u>  20  C.F.R.  §  416.924a.)

Additionally, a child's age (20 C.F.R. § 416.924b) and symptoms, including pain, must be considered.  (See 20 C.F.R. § 416.929).

Formulaically, the ALJ is required to consider how a child functions in her activities in six domains – namely, the following six broad areas of functioning intended to capture all of what a child can or cannot do (20 C.F.R. § 416.926a(b)(1)):

1)   Acquiring and using information;
2)   Attending and completing tasks;
3)   Interacting and relating with others;
4)   Moving about and manipulating objects;
5)   Caring for oneself; and
6)   Health and physical well-being.

In determining a child's ability to function in each domain, the following questions are asked to determine whether a child's functioning is affected by her impairment(s) and whether her activities are typical of other children her age who do not have an impairment.  (See 20 C.F.R. § 416.926a(b)(2)).

1)   What activities are you able to perform?
2)   What activities are you not able to perform?
3)   Which of your activities are limited or restricted compared to other children who do not have impairments?
4)   Where do you have difficulty with your activities: at home, in childcare, at school, or in the community?
5)   Do you have difficulty independently initiating, sustaining, or completing activities?
6)   What kind of help do you need to do your activities, how much help do you need, and how often do you need it?

In determining if an impairment functionally equals the listings, no specific listing will be used as a template.  (See 20 C.F.R. § 416.926a(d)).  A "marked" limitation is when your impairment interferes seriously with your ability to independently initiate, sustain, or complete activities; one that is more than moderate but less than extreme.  "It is the equivalent of the

5

functioning we would expect to find on standardized testing with scores that are at least two, but less than three standard deviations below the mean." (See 20 C.F.R. § 416.926a(e)(2)(I)). "Extreme" limitation means that your impairment interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment limits only one activity or when the interactive and cumulative effects of your impairment limit several activities. Extreme limitation also means a limitation that is more than "marked"; it is the rating given to the worst limitations. However, it does not necessarily mean a total loss of ability to function. "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." (See 20 C.F.R. § 416.926a(e)(3)(I)).

Plaintiff does not challenge the finding of the ALJ that she does not have an impairment or combination of impairments of severity to meet or medically equal a listed impairment and specifically listing 112.11, *Attention Deficit Hyperactivity Disorder* (ADHD). In that connection, the ALJ explains that "while the claimant has some problems noted with attention, the evidence of record indicates the claimant's attention deficit hyperactivity disorder is under adequate control with medication as noted by her treating doctor and her teacher." (Tr. p.13).

Plaintiff does challenge the ALJ's finding that her impairment was not functionally equivalent to one of the listed impairments; and more specifically, she contends that the evidence in the record

6

would support a finding that she had "marked" limitations in at
least two domains and "extreme" limitations in at least one domain,
and that the ALJ's contrary findings are without substantial
support in the record.   Specifically, Plaintiff argues that the
evidence in the record shows that she has "marked" and "extreme"
limitations in the domains of "<u>Attending and Completing Tasks</u>" and
"<u>Acquiring and Using Information</u>."   The Court will consider
Plaintiff's argument in context of the Court's review of the ALJ's
finding in each domain.

### 1.   Acquiring and Using Information

This domain reflects how well the child acquires or learns
information and how well the child uses information learned.  The
ALJ found that Plaintiff had less than "marked" limitations in this
domain apparently relying upon the September 19, 2005, medical
report of Dr. Eric Ritterhoff (Exh. 5F/1, Tr. 130) and the Teacher
Questionnaire form[1] dated January 21, 2004, completed by
Plaintiff's teacher Pamela Weinstein as part of the agency's
request for school records from Hanson Earl H Elementary School
(Exh. 8E, Tr. 75-88).   Plaintiff points to Ms. Weinstein's
questionnaire response that Plaintiff had problems functioning in
this domain and her ratings of Plaintiff's functioning in three of
ten predictive activities under this domain where she was judged as
having "serious" or "very serious" problems in "comprehending and

---

[1] The "Teacher Questionnaire" is a form supplied by SSA
organized into sections that cover the 6 broad domains of
functioning and seemingly tracking the agency's definition for
"marked" and "extreme" limitations for certain listed activities
encompassed within each domain.

doing math problems," "expressing ideas in written form," and in "applying problem solving skills in class discussions." (Tr. p.81, Exh. 8E/7).

Plaintiff argues that those ratings in those three activities would support a finding of both "marked" and "extreme" limitations in this domain. However, for purposes of this review, the issue is not whether the record would support Plaintiff's contention but whether there is substantial evidence in the record to support the ALJ's findings. In that regard, the answer is "yes." The predictive activities cited by Plaintiff are only three of ten activities Ms. Weinstein was asked to rate – less than half of the activities used to assess this functioning domain. More importantly, these ratings must be evaluated in context of Ms. Weinstein's related comments that she thinks,

> Carolyn's problem, in my opinion, is lack of prior knowledge. Carolyn is very capable of learning. She has not been exposed to writing utensils until this year; in this area, she is far behind. However, I have seen, even though it's below the others, improvement. I will hold Carolyn in kindergarten another year and I think she will be fine. She was only 4 when school started.

(Tr. p.82, Exh. 8E/8). More importantly, based upon this qualifying comment by Plaintiff's teacher, the ALJ had good reason to view Plaintiff's problems in this domain as being temporary and reflective only of her low level of preparation for school. The ALJ states that he also relied upon Exh. 5F described as "Medical Report" dated September 19, 2005, from Eric Ritterhoff, M.D., (the treating psychiatrist). (Exh. 5F/1, Tr. 130). Unfortunately, the Court is unable to decipher what this one page report says;

however, the testimony of Plaintiff's mother at the hearing before the ALJ suggests that it has something to do with Plaintiff experiencing what he calls "severe insomnia." (Tr. 145). Given the nature of Dr. Ritterhoff's one page indecipherable report dated September 19, 2005, the Court is inclined to believe that the ALJ erroneously cited the exhibit number for Dr. Ritterhoff's medical records in the record as Exh. 4F (Tr. pp.116-129) covering the treatment period April 18, 2004 to June 7, 2005. These records, and particularly his medication evaluation reports beginning in October 2004 (Exh. 10 Tr. 125), showed that medications were improving Plaintiff's behavior and explaining:

> She, as usual however is 'busy.' That is she is focused on her activities. She has questions. She has observations. They are well articulated. They are not irrelevant. Attention span is highly self-focused. Capacity to attend to external issues continues to be low. The report is that the Adderall has decreased her hyperactivity and with the Clonidine she is more manageable at school. There are no problems with sleep or appetite. This child continues being somewhat over activated given the very young age. We will not make her dose any higher than what it is now. There is no tic. Overall level of social functioning as far as cooperation, et cetera, is still intact. We will see her again in a month and reassess at that time.

Dr. Ritterhoff's last medication evaluation report continues to see progress as he reports among other things that,

> she is not reported to be having any problems in school and making some progress with learning things in kindergarten. She is continuing to tolerate the Clonidine four times a day without any significant daytime sedation. She is not showing marked distractability . . .

(Exh. 4F5, Tr. p.120). For these reasons, the Court cannot say that there is not substantial evidence in the record to support the

ALJ's finding with respect to this domain.

### 2.  **Attending and Completing Tasks**

This domain considers how well the child focuses and maintains attention; begins, carries through, and finishes activities (including the pace at which activities are performed); and the ease with which the child changes activities.

The ALJ found that Plaintiff had less than "marked" limitations.  He again cites the Questionnaire of Ms. Weinstein (Exh. 8E) that Plaintiff,

> has been paying attention, sustaining attention, focusing attention long enough to finish her tasks, can carry out one step instructions, can wait her turn, change from one activity to another without being disruptive, is completing homework assignments, can work without distracting others and working at a reasonable pace.

In the rating of 13 predictive activities for this domain, Plaintiff was only rated serious or very serious in two activities: "carrying out multi-step instructions" and "completing work accurately without careless mistakes."  Ms. Weinstein, in written comments, qualifies her assessment by saying,

> Carolyn misses multiple directions due to not paying attention.  She watches part of a demonstration and therefore can only do part of it correctly.  She can sit and attend when she's had her medicine.

Plaintiff disregards the ratings in ten predictive activities in which she had no problem or only a "slight" problem such as "paying attention when spoken to directly," "sustaining attention during play/sports activity," "focusing long enough to finish assigned activity/task," "refocusing to task when necessary," "carrying out single step instructions," "waiting to take turns,"

10

"changing from one activity to another without being disruptive,"
"completing class/homework assignments," "working without
distracting self or others," and "working at reasonable
pace/finishing on time."   Given this overview of Ms. Weinstein's
assessment of this domain, the Court must say that the ALJ's
finding is supported by substantial evidence in the record.   It
must be remembered that a finding of substantial evidence in the
record to support the ALJ's finding does not foreclose a different
finding urged by Plaintiff that would also have support in the
record.   However, as observed *supra*, the Court's function is not to
try the case *de novo* or to supplant the ALJ's finding with the
Court's own assessment of the evidence as Plaintiff would have me
do.

### 3.   <u>Interacting and Relating with Others</u>

The issue in this domain is how well the child initiates and
sustains emotional connections with others, develops and uses the
community's language, cooperates with others, complies with rules,
responds to criticism, and respects and takes care of the
possessions of others.

The ALJ found that Plaintiff has "marked" limitations in this
domain despite the fact that Ms. Weinstein reported that she had
<u>not observed that Plaintiff has any problems</u> in this domain.
(emphasis added). (Exh. 8E/9, Tr. 83).   The ALJ relies upon the
"very serious" rating Ms. Weinstein gave to the predictive activity
of "carrying out multi-step instructions" under the domain of
<u>Attending and Completing Tasks</u>.   Apparently, the ALJ considered
this activity to also have relevance to the domain of <u>Interacting</u>

11

and Relating to Others.  Plaintiff latches on to this unexplained transposition of this predictive activity from its usual domain to this one and argues that if it is the basis for finding that she has "marked" limitations in this domain, it should also produce a "marked" limitation in the domain "Attending and Completing Tasks," its listed domain.  Since one predictive activity can be used to support an assessment in more than one domain, Plaintiff  has a point.[2]   However, a "serious" or "very serious" rating in one predictive activity does not necessarily mandate a finding by the ALJ that a child's impairment has produced a corresponding effect in the domain since this is only one of several activities under the domain; and the matter of the child's activities is only one of the factors to be considered by the ALJ.  Had the ALJ's finding been challenged for reasons expressed *supra*, the Court would be hard pressed to find substantial evidence in the record to support it since apparently only one predictive activity was relied upon and in light of Ms. Weinstein's judgment that Plaintiff had no problems in this domain.   However, since Plaintiff is not challenging the ALJ's finding in this domain, the Court is not required to determine if the ALJ's finding of "marked" limitations in this domain is supported by substantial evidence in the record.

### 4.   Moving About and Manipulating Others

In this domain, the ALJ found that Plaintiff had no limitations, finding that she can wind up a toy and can print some

---

[2] The Regulations make clear that ". . . any given impairment may have affects in more than one domain; therefore we will evaluate the limitations from your impairment in any affected domain."  (20 C.F.R. § 416.926a(c)).

letters, she can play board games, she can use a fork, she has
control of her bowels, she dresses herself with help, and she can
brush her teeth with help.  She can usually do two things at once,
like coloring and watching TV.  The ALJ cites to the SSA Function
Report completed December 20, 2003 (Exh. 1E, Tr. 41) as the basis
for his finding.  The record reveals that Ms. Weinstein's report
also indicates that Plaintiff has no problems in this domain.
Plaintiff has not challenged the ALJ's finding of no limitation in
this domain.

### 5.  Caring for Yourself

The issue in this domain is how well the child maintains a
healthy emotional and physical state including appropriately
seeking and maintaining physical and emotional wants and needs;
coping with stress and environmental changes; and caring for his or
her own health, possessions, and living area.  The ALJ found that
Plaintiff had no limitation in this domain.  The ALJ explained his
finding by observing that Plaintiff,

> is able to brush her teeth and dress herself with help.
> She can use the toilet, can do things for herself, can
> throw a ball over her head, walk up and down stairs with
> opposing feet, and use a fork to feed herself.

Again the ALJ cites to the SSA Function Report completed
December 20, 2003, as the basis for his finding in this domain.
The Court would note that this finding is consistent with the
report of Ms. Weinstein who observed no problems in this domain.
(Exh. 8E, Tr. 85).  Again, Plaintiff does not challenge this
finding of no limitation in this domain.

### 6.  Health and Physical Well-Being

13

In this domain, the issue is the cumulative physical restrictions upon functioning of physical and mental impairments and their associated treatments or therapies on the child's functioning not considered in the "moving about and manipulating objects" domain. The ALJ found that Plaintiff had no limitations in this domain finding that "the claimant's treating physician, teacher, and her mother have all agreed that the claimant has had no physical problems." Plaintiff does not challenge the finding in this domain.

Plaintiff makes a broader challenge to the ALJ's decision beyond the ground that there is not substantial evidence in the record to support his findings respect to Plaintiff's limitations in the various domains. She argues that somehow the ALJ failed in his obligation to develop the record. The only explanation of this criticism is her statement that:

> The regulations provide that 'when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques,' the ALJ will seek additional information or clarification from that medical source. (See 20 C.F.R. § 416.912(e)(1)).

Unfortunately, Plaintiff does not identify the medical conflict or ambiguity she is referring to nor does she indicate what is the necessary information that is lacking and which should have been developed by the ALJ. Plaintiff's argument that the ALJ failed to develop the record by obtaining a consultative examination (Plaintiff's brief at 15, 21-24) is without merit. The regulations require the ALJ to order a consultative report when the evidence is

insufficient upon which to support a decision on a claim.  (See 20
C.F.R. § 416.919a(b)).  There was ample evidence in the record upon
which the ALJ could base his decision.  Given the tender age of
Plaintiff, the persons most favorably situated to observe her
functioning and activities of daily living were her mother and her
school teacher; and their observations were in the record.  There
is no suggestion in the record that Plaintiff had any medical
problems and that explains the paucity of reports from medical
sources.  Even so, the record contains a psychological evaluation,
treatment notes, medication management notes, teacher assessments,
social workers' reports, and testimony from Plaintiff's mother.
Plaintiff does not explain why an additional consultative
examination was necessary.  Plaintiff was represented by an
attorney at the hearing and was given an opportunity by the ALJ to
supplement the record with additional evidence and/or to request
such.  See Glenn v. Sec'y of Health & Human Servs., 814 F.2d 387,
391 (7th Cir. 1987)(a claimant who is represented by counsel is
assumed to have presented her "strongest case for benefits").  In
any event, Plaintiff has not shown that another consultative
examination would have led the ALJ to reach a different result.
See Binion v. Shalala, 13 F.3d 243, 245 (7th Cir. 1987)("mere
conjecture or speculation that additional evidence might have been
obtained in the case is insufficient to warrant a remand").

Plaintiff argues that the record may be incomplete because the
ALJ did not specifically inquire as to whether standardized testing
had been performed on her. (Plaintiff's brief at 23-24).  Plaintiff
has given the Court no reason to believe that there was other

15

evidence available which the ALJ failed to obtain prior to making his decision.  Where there is substantial evidence in the record to support the ALJ's decision, additional relevant evidence that would not effect the decision is not necessary.

Plaintiff's argument that the ALJ was required to order standardized tests which are "necessary to satisfy the listing is without merit." (Plaintiff's brief at 23-24). While the Regulations indicate that standardized test scores may be relied upon in addressing the domains of functioning, such tests are merely one more piece of evidence, if available, for the ALJ to weigh.  (See 20 C.F.R. 416.926a(e)(4)(I)).  Also see, Sanchez v. Barnhart, 467 F.3d 1081 (7th Cir. 2006)(recognizing that test scores are not conclusive).

Plaintiff argues that the ALJ was obligated to recontact Dr. Ritterhoff to obtain his opinion as to any limitations Plaintiff had.  (Plaintiff's brief at 22).  However, the duty to recontact arises only when the evidence received is inadequate to determine whether Plaintiff is disabled.  (See 20 C.F.R. § 416.912(e); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004)).  In the instant case, there was ample evidence upon which the ALJ could base his decision; therefore the ALJ was not required to recontact Dr. Ritterhoff.  Plaintiff argues that the ALJ improperly made his own independent medical findings when he considered Plaintiff's progress notes and medication checks.  (Plaintiff's brief at 22). However, the ALJ does not impermissibly "play doctor" when he reviews the medical evidence and resolves conflicts between the medical and other evidence.  See Richardson, 402 U.S. at 399)("we

16

. . . are presented with the not uncommon situation of conflicting medical evidence.  The trier of fact has the duty to resolve the conflict.") "The cases in which [this Court has] reversed because an ALJ impermissibly 'played doctor' are ones in which the ALJ failed to address relevant evidence."  In fulfilling this duty, an ALJ should not reject significant evidence, such as a physician's report, without providing a reasoned explanation for discounting that information.  See Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000).  In our case, the ALJ did not reject a physician's report.  Rather, he largely adopted the only psychiatrist's opinion of record regarding Plaintiff's functional limitations.  He reasonably credited later treatment notes and Plaintiff's mother's subjective allegations by finding that Plaintiff was entitled to greater limitations than the state agency psychologist found.  That the ALJ weighed the medical and other evidence of record and made functional findings more restrictive than any physician of record does not amount to "playing doctor."

Lastly, Plaintiff argues that the ALJ's findings that she had been doing well for a two-year period was not supported by substantial evidence. (Plaintiff's brief at 16-19).  The ALJ reasonably considered that despite occasional incidents of acting out and behaving defiantly toward her mother, Plaintiff was still able to function adequately at school and at home.  While Plaintiff cites to incidents of acting out, yelling, and hitting her mother during one therapy session (Plaintiff's brief at 17), there was no evidence of excessive absenteeism from school nor was there evidence of behavior so serious that Plaintiff required specialized

17

instruction or to be removed from her general classroom.  <u>See</u>
<u>Sanchez</u>, 467 F.3d 1081 (7th Cir. 2006)(recognizing that it is hardly
unusual for a child to sometimes be difficult or aggressive in
school).

As to Plaintiff's argument that the record does not support
the ALJ's finding that she was doing well with medications on a
sustained basis, while doctor's notes reflected ongoing adjustments
in her medications citing increases in her dosages of Adderall over
a period of time, they also recorded good response to that
medication without absence of side affects.  (Tr. 120, 124, 126).

Plaintiff complains that the ALJ did not credit Plaintiff's
mother's testimony and summarized it in his decision.   He
reasonably found the mother's testimony credible insofar as it was
consistent with the medical and other evidence of record.  (Tr.
17). <u>See</u> 20 C.F.R. § 416.929(a). (We will consider the extent to
which your symptoms are consistent with the objective medical
evidence.)  Plaintiff's mother testified that medication helped a
great deal, which was consistent with the medical evidence of
record and the ALJ's findings.

For all of the above reasons, the decision of the ALJ was
based on substantial evidence in the record, and the Commissioner
is entitled to summary judgment.  SO ORDERED.


ENTERED this  30th  day of January, 2007.


                                   s/Joe  B.  McDade
                                 JOE BILLY McDADE
                             United States District Judge